UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
WALTER PORTES,

       Petitioner,

                          **MEMORANDUM AND ORDER**
          -against-              16-CV-06294 (LDH)

MICHAEL CAPRA,

       Respondent.
------------------------------------------------------------------x
LASHANN DEARCY HALL, United States District Judge:

       Petitioner Walter Portes brings the above-captioned petition pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights. Petitioner's claims arise from a judgment of conviction following a jury trial in the Supreme Court of New York State, Kings County, on charges of murder in the second degree and criminal possession of a weapon in the second degree. For the reasons stated below, the petition is denied.

## BACKGROUND

**I.   Trial**

       On December 5, 2008, Edward Tse was shot four times in front of his Brooklyn, New York home and found face down on his doorstep. (Tr. 6:2–13.)[1] Petitioner was arrested and charged with murder in the second degree and criminal possession of a weapon in the second degree on November 19, 2010, and tried before a jury. (Tr. 16:11–20.)

       At trial, the government's case relied, in part, on the testimony of Raphael Pena, who gave Petitioner the gun used in the crime; Ross Weinstein, who accompanied Petitioner the night of the murder; as well as the testimony of police officers, ballistics detectives, and a medical

---

[1] Citations to "Tr." refer to the trial transcript of *New York v. Portes*, Indictment No. 9981/2010, ECF No. 9-1.

1

examiner. In addition to this testimonial evidence, the prosecution entered an autopsy report of Mr. Tse prepared by Dr. Beverly Leffers. Because Dr. Leffers had retired by the time of trial, the government relied on the testimony of Dr. Kathleen McCubbin, a forensic pathologist employed by the Office of Chief Medical Examiner, to introduce the report into evidence. (Tr. 112; 117.) During summations, the prosecutor described Petitioner as "hunting" the decedent (Tr. 315:12–13; 326:3–4; 327:14–16; 337:8.) and characterized the defense's self-defense theory as "absurd." (Tr. 316:22–25.)

On August 9, 2012, Petitioner was convicted of murder in the second degree and criminal possession of a weapon in the second degree. (Tr. 389:17–24.) Petitioner was sentenced to concurrent sentences of twenty-five years to life for the murder charge and fifteen years for the gun charge. (Sentencing Tr. 14: 9–15.)[2]

## II. Direct Appeal

Petitioner timely appealed, raising two issues related to his conviction: (1) that the admission of the autopsy report without the testimony of the medical examiner who prepared it violated his constitutional right of confrontation, and that defense counsel was ineffective for not objecting to the admission of the autopsy report; and (2) that comments made by the prosecutor during summation deprived him of a fair trial. *See People v. Portes*, 125 A.D.3d 794, 794 (2d Dep't 2015).

The Supreme Court, Appellate Division, Second Department, affirmed the conviction. *Id.* The court rejected Petitioner's Confrontation Clause claim, citing *People v. Freycinet*, 11 N.Y.3d 38, 42 (2008), on the ground that autopsy reports are not testimonial evidence. *See Portes*, 125 A.D.3d at 794. The court held that Petitioner's ineffective assistance of counsel

---

2 Citations to "Sentencing Tr." refer to the transcript of Petitioner's sentencing proceedings, which took place on August 31, 2012, ECF No. 9-1.

claim therefore failed because "counsel is not deemed ineffective for failing to make a motion or argument that had little or no chance of success." *Id.* The court further held that Petitioner's objections to comments made by the prosecutor during summation were not preserved for appellate review because defense counsel did not object to the comments during the trial. *Id.* Moreover, the court held that, even if the objection had been preserved, Petitioner's claim would fail on the merits because the challenged comments were either "fair comment on the evidence . . . or responsive to arguments and theories presented in the defense summation." *Id.* And, to the extent that any remark was improper, it did not deprive Petitioner of a fair trial. *Id.*

The Court of Appeals denied Petitioner leave to appeal on August 14, 2015. *See People v. Portes*, 26 N.Y.3d 933, 933 (2015). Petitioner filed a petition for writ of habeas corpus on November 13, 2016, raising the same two issues that he presented in his direct appeal in state court.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013).

For the purposes of federal habeas review, "clearly established Federal law" is defined as

3

"the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. Factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### I. Confrontation Clause and Ineffective Assistance of Counsel Claim

Petitioner claims that the admission of the autopsy report without the testimony of the medical examiner who prepared the report violated his constitutional right of confrontation and that defense counsel was ineffective for failing to object to the admission of the autopsy report. (*See* Pet'r's Mem. in Support of Appl. for Habeas Corpus ("Pet'r's Mem.") at 6, ECF No. 1). The Court disagrees.

The Sixth Amendment—made applicable to the states via the Fourteenth Amendment—provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." 541 U.S. 36, 53–54 (2004). Notably, the Court provided examples of the "core class" of out-of-court testimonial

4

statements that may not be admitted without confrontation, including "material such as affidavits, custodial examinations . . . or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.* at 52. The Court did not, however, define "testimonial," "leav[ing] for another day any effort to spell out a comprehensive definition." *Id*. at 68.

Some years later, in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), the Supreme Court further elaborated on what may constitute a testimonial statement subject to the Confrontation Clause. *Melendez-Diaz* concerned the admission of certificates reporting positive drug test results without the testimony of the analyst who conducted the testing and authored the initial reports. 557 U.S. at 308. The Court reasoned that the documents at issue, though named "certificates" under Massachusetts law, were testimonial because they were "quite plainly affidavits," "solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact." *Id*. at 310 (quoting *Crawford*, 541 U.S. at 51). In other words, they were "functionally identical to live, in-court testimony." *Id.* at 310–11. In *Bullcoming*, the appellant challenged the admission of a report that included the results of the appellant's blood-alcohol testing when the analyst who signed the certification or observed the test did not testify. 564 U.S. at 651. The Court held that the report was testimonial because, like in *Melendez-Diaz*, it was "created solely for an 'evidentiary purpose' . . . made in aid of a police investigation." *Id*. at 664 (quoting *Melendez-Diaz*, 557 U.S. at 311).

The Supreme Court has not addressed directly the question of whether autopsy reports are *per se* testimonial statements. However, following the reasoning in *Melendez-Diaz* and *Bullcoming*, some circuit courts have held autopsy reports to be *per se* testimonial. *See, e.g.*,

5

*United States v. Ignasiak*, 667 F.3d 1217, 1230–33 (11th Cir. 2012) (holding that autopsy reports were testimonial because they were prepared for future use at trial); *United States v. Moore*, 651 F.3d 30, 72–73 (D.C. Cir. 2011) (holding that autopsy reports were testimonial because certain factors, including law enforcement's involvement in the creation of the reports and that homicide by gunshot wounds was the manner of death, "would lead an objective witness reasonably to believe that the statements would be available for use at a later trial"). The Second Circuit, however, has to date refused such a categorical approach. Rather, the Second Circuit has held that, consistent with the Supreme Court's ruling in several cases, including *Melendez-Diaz* and *Bullcoming*, an autopsy report will be deemed testimonial only where, "under the circumstance, the autopsy report . . . was prepared with the primary purpose of creating a record for use at a later criminal trial." *United States v. James*, 712 F.3d 79, 97 (2d Cir. 2013). And, "although autopsies are often used in criminal prosecutions, they are also prepared for numerous other reasons—including the determination of cause of death when there is no anticipation of use of the autopsy in any kind of court proceeding." *Vega v. Walsh*, 669 F.3d 123, 128 (2d Cir. 2012).

In any event, no matter how the Second Circuit might deem the autopsy report here, its admission at trial cannot provide a basis for habeas relief. The Second Circuit has previously barred habeas relief on the grounds asserted here, because of the continuing evolution of the law in this area and the uncertainty of how the Supreme Court might rule on this issue.[3] *Vega*, 669 F.3d at 127. This uncertainty remains today and precludes Petitioner's relief on the grounds that the autopsy report should not have been admitted at trial. *See Greene v. Fisher*, 565 U.S. 34, 38

---

3 At least two other circuit courts have recognized the current uncertainty in this area. *See Mitchell v. Kelly*, 520 F. App'x. 329, 331 (6th Cir. 2013) (upholding a district court's denial of a habeas corpus petition because "[n]o Supreme Court precedent clearly established that an autopsy report constitutes testimonial evidence"); *Nardi v. Pepe*, 662 F.3d 107, 111–12 (1st Cir. 2011) (upholding a district court's denial of a habeas corpus petition on the basis that, "[a]bstractly, an autopsy report can be distinguished from, or assimilated to, the sworn documents in *Melendez-Diaz* and *Bullcoming* . . . . The law has continued to evolve and no one can be certain just what the Supreme Court would say about that issue today").

6

(2011) (explaining that "§ 2254(d)(1) requires federal courts to 'focu[s] on what a state court knew and did,' and to measure state-court decisions 'against this Court's precedents as of 'the time the state court renders its decision'") (quoting *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011)).

The uncertainty surrounding the law on the treatment of autopsy reports is similarly fatal to Petitioner's ineffective assistance of counsel claim. To establish a claim of ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Where the claim of ineffective assistance of counsel is premised upon an attorney's failure to lodge an objection, habeas relief must be denied if the state of the law upon which the objection would have been made was uncertain at the time of the attorney's decision not to object. *See United States v. De La Pava*, 268 F.3d 157, 166 (2d Cir. 2001) (noting "the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized") (quoting *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999)). Again, this is the case here. Accordingly, because the Supreme Court has not firmly determined if autopsy reports are testimonial evidence subject to the Confrontation Clause, Petitioner's counsel cannot be deemed to be ineffective for not objecting to the admission of the autopsy report. Petitioner's ineffective assistance of counsel claim therefore fails.

## II. Prosecutorial Misconduct Claim

Petitioner claims that statements made by the prosecutor during his summation improperly appealed to the jurors' emotions, denigrated the defense, and deprived Petitioner of due process. (Pet'r's Mem. 24–26.) In particular, Petitioner challenges the prosecutor's description of Petitioner as "hunting" the victim (Tr. 315:12–15; 326:3–4; 327:14–16; 337:8) and the prosecutor's characterization of the defense's self-defense theory as "absurd." (Tr. 316:24–25.) Petitioner's claim is procedurally barred from federal habeas review, however, because the state appellate court dismissed the objection on an independent and adequate state law ground. *See People v. Portes*, 125 A.D.3d 794 (2d Dep't 2015).

A claim is procedurally barred from federal habeas review if the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). A prisoner can only overcome this bar if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id*. at 750. "A procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)).

The Appellate Division found that Petitioner's objections to the prosecutor's summation were not preserved for appellate review because defense counsel did not object to the prosecutor's comments during the trial, as required by New York's contemporaneous objection rule. *People v. Portes*, 125 A.D.3d 794 (2d Dep't 2015). According to the contemporaneous objection rule, in order to appeal a ruling or instruction of a criminal court during a trial or

proceeding, the party claiming error must have objected to the ruling "at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law 470.05(2). New York courts have interpreted this rule to require, "at the very least, that any matter which a party wishes" to preserve for appellate review be "brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 85 N.Y.2d 71, 78 (1995). The rule is "firmly established and regularly followed," and serves as an independent and adequate state law ground upon which to bar Petitioner's claim from federal habeas review. *Whitley v. Ercole*, 642 F.3d 278, 286–88 (2d Cir. 2011). Petitioner also has not demonstrated cause or prejudice, or argued that a fundamental miscarriage of justice would result from a failure to consider the claims to overcome this procedural bar. Accordingly, Petitioner's prosecutorial misconduct claim is procedurally barred from federal habeas review.

Petitioner's claim also fails on the merits. "[A] prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In order to be entitled to habeas relief, a petitioner must "demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). "[T]he Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly." *United States v. Young*, 470 U.S. 1, 12 (1985). "The remarks must be examined within the context of the trial" and "must also take into account defense counsel's opening salvo." *Id.* A prosecutor's statements during summations that are "permissible

9

inferences from the evidence at trial" do not constitute prosecutorial misconduct. *See United States v. Rivera*, 971 F.2d 876, 884 (2d Cir. 1992); *see also Young v. McGinnis*, 411 F. Supp. 2d 278, 306 (E.D.N.Y. 2006) (holding that a prosecutor's "florid[ ] characterization" of a witness as "walking a tight rope between life and death" during summations was not excessive in light of the evidence that the witness was in grave danger of being killed by the petitioner).

Here, the prosecutor's description of Petitioner as "hunting" the decedent was also based on the facts adduced at trial. Weinstein, who was with Petitioner on the night of the murder, testified at trial that Petitioner and another individual tracked down the decedent by waiting outside the decedent's house for multiple hours in a car and driving to a club they thought that the decedent was frequenting. (Tr. 260–267.) Weinstein also testified that Petitioner was armed and had planned to use Weinstein as a lookout. (Tr. 261; 268.) The prosecutor's use of the term "hunting" is derived from the evidence adduced at trial; and, as such is a permissible inference that cannot serve as a basis for a viable prosecutorial misconduct claim.

The prosecution's characterization of the defense theory of self-defense as "absurd" likewise was not improper such that it could be said to constitute prosecutorial misconduct. The Second Circuit has long held that "[a] prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *Rivera*, 971 F.2d at 884 (citing *United States v. Wilner*, 523 F.2d 68, 74 (2d Cir. 1975)). For example, the Second Circuit has found that a prosecutor's use of phrases like "fairy tale," *S. v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995), "ridiculous," *Rivera*, 971 F.2d at 884, a "red herring," *United States v. Beridze*, 415 Fed. App'x. 320, 327–28 (2d Cir. 2011), as well as "hog wash" and "smoke screen," *United States v. Millar*, 79 F.3d 338, 343–44 (2d Cir. 1996), do not rise to the requisite level of severity that warrants reversal. Here, like the aforementioned cases, the prosecutor's use of the term "absurd" to

characterize the defense's self-defense theory did not diminish the jury's ability to "judge the evidence fairly." *Young*, 470 U.S. at 12. Thus, even if Petitioner's prosecutorial misconduct claim was not procedurally barred, it would fail on the merits.

## CONCLUSION

For the foregoing reasons, the habeas petition is denied, and the petition is dismissed. Because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Clerk of the Court is directed to close this case.

Dated: Brooklyn, New York
       September 7, 2018

SO ORDERED:

/s/LDH
LaSHANN DeARCY HALL
United States District Judge